# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS
# BENTON DIVISION

| | |
|---|---|
| Dawn Hancock, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>- against -<br><br>Arizona Beverages USA LLC,<br><br>                Defendant | 3:21-cv-01735<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Arizona Beverages USA LLC ("Defendant") manufactures, labels, markets, and sells mango drinks identified as "Mucho Mango Fruit Cocktail," under the Arizona brand ("Product").



2. The relevant front label representations include "Mucho Mango," "Fruit Juice Cocktail," "All Natural," pictures of mangos and "VITAMIN C FORTIFIED" and "VITAMIN C FORTIFIED – ANTIOX."

 

3. "VITAMIN C FORTIFIED" and "VITAMIN C FORTIFIED – ANTIOX" are relative nutrient content claims with the descriptor, "fortified."

4. Nutrient content claims tell consumers about the levels of a nutrient in a food.

5. FDA regulations, identical to those of this State, restrict nutrient content claims to those that are specifically authorized.

6. If a nutrient content claim is not authorized, it is prohibited.

7. The purpose is to prevent consumers being deceived by the endless terms that marketers can devise in order to gain advantage in the marketplace, at the detriment of the public.

8. Relative nutrient content claims compare the level of a nutrient in one food with another food. 21 C.F.R. § 101.13(j).

9. Relative claims are required to identify the particular food a product is comparing itself against when making such a claim. 21 C.F.R. § 101.13(j)(2)(i).

10. Consumers understand "fortified with vitamin C" in the same way as "added vitamin C," to describe differences in the level of vitamin C between two similar foods that result from the addition of vitamin C in the food bearing the claim. 21 CFR 101.13(j)(1).

11. Since "Fortified with Vitamin C" is a relative claim, it is required to contain at least

10 percent more vitamin C than a reference food. 21 CFR 101.54(e)(1)(i).

12. A reference food for the Product would be a similar fruit beverage which has not been fortified. 21 CFR 101.54(e)(1)(iii).

13. However, the Product does not list any reference food, and consumers are not told the basis for the Product's claim to be "fortified with Vitamin C."

14. The addition of vitamin C to the Product is not consistent with the FDA's fortification policy. 21 CFR 101.54(e)(1)(ii).

15. Fortification of the Product is not appropriate because there is no nutritional deficiency in vitamin C recognized by the scientific community and the addition of vitamin C does not replace nutrients lost in storage, handling, or processing.

16. The Product contains 22 grams of added sugars per eight oz serving, which is 44% of the daily value of added sugars.



17. The Product contains 15% of the daily value for vitamin C, through addition of ascorbic acid, as shown in the ingredient list.

**INGREDIENTS:** FILTERED WATER, HIGH FRUCTOSE CORN SYRUP (GLUCOSE-FRUCTOSE SYRUP), MANGO PUREE, PEAR JUICE FROM CONCENTRATE, CITRIC ACID, ASCORBIC ACID (VITAMIN C), NATURAL FLAVORS, BETA CAROTENE FOR COLOR, GUM ACACIA, ESTER GUM.

18. Dietary guidance indicates foods with high added sugar content such as the Product should be consumed sparingly.

19. Fortification of the Product is deceptive, causing consumers to purchase it instead of other products, which are consistent with dietary guidance.

20. The Product contains other representations which are misleading, such as "All Natural."

21. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

22. The value of the Product that Plaintiff purchased was materially less than its value as represented by defendant.

23. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

24. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

25. The Product is sold for a price premium compared to other similar products, no less than approximately $3.79 per 128 oz, a higher price than it would otherwise be sold for, absent the

misleading representations and omissions.

## Jurisdiction and Venue

26. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

27. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

28. Plaintiff Dawn Hancock is a citizen of Illinois.

29. Defendant Arizona Beverages USA LLC, is a New York limited liability company with a principal place of business in Woodbury, Nassau County, New York and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

30. Defendant transacts business within this District through sale of the Product at stores within this State and District, including big box stores, convenience stores, drug stores, grocery stores, club stores, and online, sold directly to residents of this District.

31. Venue is in this District because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

32. Venue is in the Benton Division in this District because a substantial part of the events or omissions giving rise to the claim occurred in Williamson County, i.e., Plaintiff's purchase of the Product and her awareness of the issues described here.

## Parties

33. Plaintiff Dawn Hancock is a citizen of Johnson City, Williamson County, Illinois.

34. Defendant Arizona Beverages USA LLC, is a New York limited liability company with a principal place of business in Woodbury, New York, Nassau County.

35. Defendant is one of the largest sellers of non-carbonated beverages in the country,

from its eponymous iced teas to dozens of types of fruit beverages.

36. Defendant's products, including the Product in this action, are sold to consumers by third-parties, available online and in almost every convenience store, grocery store, big box store, drug store in Illinois.

37. The Product is sold in various sizes, in bottles designed for one person, to 128 oz, for multiple people.

38. Defendant is an established and leading seller of non-carbonated beverage for over two decades, which has resulted in high levels of trust by consumers and goodwill.

39. Defendant's products are known for their elaborate and unique artwork on its labels, rendering them instantly identifiable by consumers.

40. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, 2802 Outer Dr, Marion, IL 62959 between June and August 2021, among other times.

41. Plaintiff bought the Product because she expected it contained more vitamin C than similar beverages, and was the type of food acceptable to contain added nutrients because that is what the representations said and implied.

42. Plaintiff relied on the words and images on the Product, on the labeling and/or claims made by Defendant in digital and/or social media.

43. Plaintiff bought the Product at or exceeding the above-referenced price.

44. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

45. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

46. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

47. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities and/or composition.

48. Plaintiff is an unable to rely on the labeling of not only this Product, but other similar products, because she is an unsure of whether their representations are truthful.

## Class Allegations

49. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Ohio, Michigan, Nevada, Arizona, Rhode Island, North Dakota, Oregon, Texas, Iowa, Kansas, Virginia, Tennessee, New Hampshire, Maine, Alaska, South Dakota, and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged

50. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

51. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

52. Plaintiff is an adequate representative because her interests do not conflict with other members.

53. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

54. Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

55. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

56. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

57. Plaintiff incorporates by reference all preceding paragraphs.

58. Plaintiff and class members desired to purchase a product that contained more vitamin C than similar beverages, and was the type of food acceptable to contain added nutrients.

59. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

60. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

61. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

62. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

63. Plaintiff relied on the representations that the Product contained more vitamin C than similar beverages, and was the type of food acceptable to contain added nutrients

64. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

65. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

66. Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

67. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

68. In addition, defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

69. The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained more vitamin C than similar beverages, and was the type of food acceptable to contain added nutrients.

70. Defendant directly marketed the Product to consumers through its advertisements and partnerships with retailers.

71. Defendant knew the qualities of beverages its potential customers like Plaintiff were seeking, and developed its marketing to meet those specific needs and desires.

72. Defendant's representations affirmed and promised that the Product contained more vitamin C than similar beverages, and was the type of food acceptable to contain added nutrients.

73. Defendant described the Product as one which contained more vitamin C than similar beverages, and was the type of food acceptable to contain added nutrients, which became part of the basis of the bargain that the Product would conform to its affirmation and promise.

74. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

75. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high quality products.

76. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

77. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

78. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised and not fit for the purpose for which it was intended.

79. The Product was not merchantable because it was not adequately contained, packaged, and labeled as required by the representations, and did not conform to the promises or affirmations of fact made on the container or label if any.

80. Defendant had reason to know that the purpose for which the Product was bought by Plaintiff and consumers was because they expected it contained more vitamin C than similar beverages, and was the type of food acceptable to contain added nutrients, and they relied on Defendant's skill or judgment to select or furnish such a suitable product.

81. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

## Negligent Misrepresentation

82. Defendant had a duty to truthfully represent the Product, which it breached.

83. This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high quality products.

84. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

85. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

86. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

87. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained more vitamin C than similar beverages, and was the type of food acceptable to contain added nutrients.

88. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and/or constructive knowledge of the falsity of the representations.

89. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

90. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   December 22, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com